IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
vs. ) CIV 99-964 JP/LCS
)
JESUS MAGALLANES )
)
    Defendant. )

## UNITED STATES' REQUESTED FINDINGS OF FACTS

**COMES NOW THE UNITED STATES OF AMERICA,** by and through David C. Iglesias, United States Attorney for the District of New Mexico, and Mark D'Antonio, Assistant United States Attorney for said District, submits its requested Findings of Fact.

### I. BACKGROUND

On June 1, 2001, the United States Court of Appeals for the Tenth Circuit issued an Order and Judgment in the above-captioned case. The Court considered the defendant's request for appellate relief of the district court's order denying his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In its Order and Judgment, the Court addressed two major issues raised by Defendant Jesus Magallanes. The Court rejected Defendant's claim under Federal Rules of Criminal Procedure 11(d), finding that issue not only procedurally barred but lacking merit as well.

Defendant's second argument centered on the district court's failure to correctly identify Defendant's maximum sentencing exposure under Federal Rules of Criminal Procedure 11 (c)(1).



The Court found that, in order to prevail, Defendant "must show that he would not have pled guilty if the district court had advised him of the correct maximum sentence."[1] In addition, the Court cited the holding in United States v. Young, 927 F.2d 1060, 1061-62 (8th Cir. 1991), stating that the district court's failure to advise Defendant of mandatory minimum and maximum sentences was harmless error where Defendant was aware of sentencing from other sources.[2]

Magallanes also argued that his appellate counsel, Gary Mitchell, rendered ineffective assistance by failing to raise the potential violation of Federal Rules of Criminal Procedure 11 (c)(1) on appeal. In response, the Court reasoned that if Magallanes' argument is without merit, then the claim of constitutionally ineffective assistance could not stand.[3]

Lastly, Magallanes claimed that his trial counsel, also Mr. Mitchell, was ineffective in a number of areas. According to Magallanes, Mr. Mitchell was ineffective at trial because he failed to fully discuss (1) the potential ramifications of accepting a traditional plea as opposed to a conditional plea and (2) the likelihood of the appellate court overturning the district court's denial of the motion to suppress on direct appeal. Magallanes also claims that Mr. Mitchell "was ineffective in informing him that he would only spend a maximum of five years in prison if he accepted the conditional plea."[4] Based on the complete record at that time, the Court found that there was a "colorable claim that Appellant-Defendant's plea was involuntary because of the ineffective

---

[1] United States v. Jesus Magallanes, No. 00-2124 (D.C. No. CIV-99-964-JP) Order and Judgment, 8-9.

[2] Id. at 10

[3] Id. at 9

[4] Id. at 11

2

assistance of his trial counsel."[5] Regarding Magallanes' claims of ineffective assistance of counsel, the Court instructed the district court to convene an evidentiary hearing to establish factual findings regarding the following:

1    Did the performance of Magallanes' trial counsel cause any prejudice to the Defendant-Appellant? [6]

2    Did the government actually offer Magallanes a traditional plea in exchange for a ten-year sentence on both Counts I and II?[7]

3    Was Magallanes advised by his counsel of the correct minimum and maximum sentence prior to entering his plea? [8]

4    Was Magallanes informed of the correct sentencing information prior to entering his plea? [9]

## II. REQUESTED FINDINGS OF FACT

Pursuant to the appellate court's remand, an evidentiary hearing was held before the Honorable Leslie C. Smith, United States Magistrate Judge on November 15, 2001. During the hearing, the court heard two witnesses. The United States called Gary Mitchell and Defendant Magallanes testified on his own behalf.

### A.    Trial counsel performance did not prejudice Magallanes.

1.    Gary Mitchell is an attorney licensed to practice in New Mexico and has been

---

[5] Id. at 12

[6] Id.

[7] Id.

[8] Id. at 10

[9] Id.

3

practicing law in New Mexico for 25 years. He is familiar with federal and state criminal law and has represented clients in thousands of criminal cases, including more than 100 death penalties case. Mr. Mitchell is a criminal law expert. (Tr. at 52-53)[10]

2. Gary Mitchell represented Magallanes in 1997 and 1998. He was asked by a family member of Magallanes to take over his case in August of 1997. Mr. Mitchell entered his appearance shortly thereafter, replacing Russell Aboud. (Tr. at 53-54)

3. Gary Mitchell was familiar with the legal nature of Magallanes' case and all possible defenses available. Mr. Mitchell understood that Magallanes was charged with a methamphetamine distribution charge which carried a minimum sentence of ten years and a gun charge that carried a minimum mandatory sentence of five years that would run consecutive to the ten-year sentence. (Tr. at 55)

4. In Gary Mitchell's opinion, Magallanes had no viable defense at trial and he shared that opinion with the defendant. However, Mr. Mitchell believed that Magallanes had a meritorious motion to suppress and also shared that opinion with the defendant. After lengthy discussions with the defendant, it was decided to file a motion to suppress. (Tr. at 58)

5. On September 19, 1997, Gary Mitchell received a letter from Assistant United States Attorney Daniel Haft, that offered Magallanes a plea agreement stipulating acceptance of responsibility and a role reduction if a suppression motion was not filed on the defendant's behalf.[11] In other words, Magallanes would have received a benefit of a reduced sentence if he did

---

[10]Citations to the transcripts of the November 15, 2001, Evidentiary Hearing are denoted "Tr. at___".

[11] Government Exhibit #2, correspondence from Daniel Haft to Gary Mitchell dated September 19, 1997, regarding Magallanes' case, which was received into evidence.

4

not file a motion to suppress. Conversely, he would lose a potential benefit if a suppression motion was filed. (Tr. at 60-61)

6. Gary Mitchell has been involved in "hundreds, if not thousands, of drug cases" and is thoroughly familiar with search and seizure law. Gary Mitchell discussed with Magallanes what his sentencing exposure was under the guidelines and how he could reduce his potential sentence by cooperating with the government or by winning his motion to suppress the evidence. (Tr. at 63-64)

7. Prior to the decision to go forward with a suppression motion and after receiving the letter from Mr. Haft, Gary Mitchell discussed the possible consequences of filing the motion to suppress with Magallanes. (Tr. at 61)

8. A suppression hearing was held before Senior District Court Judge Howard C. Bratton who denied the motion to suppress the physical evidence. (Tr. at 67)

9. After the suppression hearing, Gary Mitchell and the defendant discussed the possibility of cooperating with the government. He considered cooperating but decided to perfect his appeal instead. (Tr. at 68)

10. After the motion to suppress was denied, Gary Mitchell, on behalf of Magallanes, received two different plea agreements from the government. One proposed agreement was a conditional plea allowing the defendant the opportunity to appeal the suppression issue but lacked any stipulated role adjustment. The other agreement was a traditional plea offer, which barred any appeals but included a stipulated role reduction. Mr. Mitchell also received a letter from

5

Assistant United States Attorney Mythili Tharmaratnam explaining the proposed plea offers.[12] (Tr. at 69)

11. Gary Mitchell discussed the "possibilities and ramifications" as well as the "pros and cons" of both the traditional and conditional plea agreements with Magallanes. They also discussed that the possibility of winning an appeal at the Tenth Circuit Court of Appeals was not favorable. Magallanes made the decision to appeal. (Tr. at 70-72)

12. By Magallanes' own testimony, after considering Gary Mitchell's advice and being cognitive of the increased penalties he would face if the appealed failed, he authorized Gary Mitchell to start the appeal process, foregoing the traditional plea agreement. (Trial at 24 -25)

13. After Gary Mitchell advised the defendant of all his legal options, it was Magallanes' decision to file the appeal. (Tr. at 64-65)

14. Gary Mitchell did not tell Magallanes that he would only face a maximum of five years if he accepted the conditional plea agreement. (Tr. at 78)

15. By Magallanes' own testimony, Gary Mitchell instructed him to read the plea agreement prior to his plea hearing. The defendant, instead of reading the plea agreement, chose to accept Gary Mitchell's proffer that the plea agreement was "in order."[13] (Tr. at 27- 28)

16. By Magallanes's own testimony, despite the invitation to address the court

---

[12] See, Government Exhibit #3(a), a fax cover sheet from M. Tharmaratnam to Gary Mitchell dated November 11, 1997; Government Exhibit #3(b) and (c), plea agreements in the case of US v. Jesus Magallanes; and Government Exhibit #4, correspondence from M. Tharmaratnam to Gary Mitchell dated February 19, 1998, regarding Magallanes' case, which all were received into evidence.

[13] See, Government Exhibit #5(b), plea agreement signed by M. Tharmaratnam, Gary Mitchell, and Jesus Magallanes, which was received into evidence.

6

at his plea hearing, he failed to mention any irregularities or dissatisfaction with the plea agreement he had signed or with Gary Mitchell's representation. (Tr. at 28)

17. By Magallanes's own testimony, he voluntarily signed the plea agreement, including a paragraph directly above his signature line which read "I have read this agreement and carefully reviewed every part of it with my attorney." (Tr. at 34)

18. By Magallanes's own testimony, he signed the plea agreement and agreed that there had been no representations or promises from anyone as to what his sentence would be. (Tr. at 34-35)

19. At the signing of the conditional plea agreement, Gary Mitchell was confident that Magallanes was "aware of all the stipulations and requirements" of that document and made an independent decision to sign the agreement. (Tr. at 75)

20. The Tenth Circuit Court of Appeals denied Magallanes' appeal. (Tr. at 80)

21. At Magallanes' sentencing hearing, Gary Mitchell considered the possibility of a role adjustment and it was his professional opinion that a role adjustment was not warranted. (Tr. at 83)

### B. The government did not offer Magallanes a traditional plea in exchange for a ten-year sentence on Counts I and II of the indictment.

1. The government did not offer Magallanes a plea agreement to ten years on both counts of the indictment. (Tr. at 78)

2. Gary Mitchell neither encouraged Magallanes to appeal his case nor did he promise him a ten-year sentence if he gave up his right to appeal. (Tr. at 77)

C. **Magallanes was made aware of the correct minimum and maximum sentence prior to entering his plea sentencing.**

1. By Magallanes' own testimony, Gary Mitchell told him that he was facing a total of 15 years for both counts in the indictment. (Tr. at 19)

2. By Magallanes' own testimony, during his arraignment, he was properly advised of the correct penalties corresponding to the charges in the indictment, which included a methamphetamine charge carrying a minimum sentence of ten years and a gun charge which carried a minimum sentence of an additional five years.[14] (Tr. at 31-32)

3. By Magallanes' own testimony, he admitted that the plea agreement which he signed identifies the correct minimum and maximum sentences for the counts alleged in the indictment including that the ten and five-year mandatory minimum sentences would run consecutively. (Tr. at 36)

D. **Magallanes was informed of the correct sentencing information prior to entering his plea.**

1. By Magallanes' own testimony, from the very start of his case, he knew that he was facing a sentence of at least 15 years. (Tr. at 38)

2. By Magallanes' own testimony, Gary Mitchell made no promises or guarantees that he would be entitled to a five-year sentence. (Tr. at 17)

---

[14] See Government's Exhibit #1, a transcript of Appellant-Defendant's May 27, 1997 arraignment, which has been admitted into evidence.

3. Gary Mitchell informed Magallanes of the correct penalties numerous times through his representation. (Tr. at 57)

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

*[signature]*

MARK D'ANTONIO
Assistant U.S. Attorney
555 S. Telshor, Suite 300
Las Cruces, New Mexico 88011
(505) 522-2304

I HEREBY CERTIFY that a true
copy of the foregoing pleading
was hand delivered to opposing counsel
of record on this 10th day of January, 2002.

*[signature]*

MARK D'ANTONIO
Assistant U.S. Attorney
N:\MHales\attorneys\mark\magallanes\findings.wpd